FILED

1  EILEEN M. DECKER
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
4  Assistant United States Attorney
   Deputy Chief, Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-2432
7       Facsimile: (213) 894-6269
        E-mail:   ranee.katzenstein@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

2017 JAN 18  PM 12: 44

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. 17 CR 00022

13          Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                     JONATHAN TODD SCHWARTZ
14          v.

15  JONATHAN TODD SCHWARTZ,

16          Defendant.

17

18       1.   Subject to the approval of the United States Department of

19  Justice, Tax Division, this constitutes the plea agreement between

20  JONATHAN TODD SCHWARTZ ("defendant") and the United States Attorney's

21  Office for the Central District of California (the "USAO") in the

22  investigation of embezzlements from clients of GSO Business

23  Management, LLC, from 2009 through 2016, and the failure to report

24  income from these embezzlements.  This agreement is limited to the

25  USAO and cannot bind any other federal, state, local, or foreign

26  prosecuting, enforcement, administrative, or regulatory authorities.

27  ///

28  ///

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343, and subscription to a false federal income tax return, in violation of 26 U.S.C. § 7206(1).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.   Agree to and not oppose the imposition of the following conditions of probation or supervised release:

Defendant shall not engage, as whole or partial owner, employee or otherwise, in any business involving investment services, investment advice, and/or the management of the money and/or assets of any other person, business or entity, without the express approval of the Probation Officer prior to engagement in such ownership, employment or other involvement in such business.  Further, the defendant shall provide the Probation Officer with access to any and all business records, client lists and other records pertaining to the operation of any business owned, in whole or in part, by the defendant, as directed by the Probation Officer.

i.   Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

3.   Defendant further agrees:

a.   Truthfully to disclose to law enforcement officials, at a date and time to be set by the USAO, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items.

b.   To fill out and deliver to the USAO at or before sentencing a completed financial statement listing defendant's assets on a form provided by the USAO, namely, the form attached hereto as Exhibit B.

4.    Defendant admits that defendant received $1,052,000;
$1,106,500; $1,621,500; $1,346,000; and $960,000 of unreported income
in tax years 2010, 2011, 2012, 2013, and 2014, respectively.
Defendant agrees that:

      a.    If requested to do so, the defendant will cooperate
and provide information to the Internal Revenue Service with respect
to defendant's tax years 2010, 2011, 2012, 2013, and 2014.

      b.    Defendant is liable for the civil fraud penalty
imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the
understatements of tax liability for the tax years 2010, 2011, 2012,
2013, and 2014.

      c.    Defendant will, before sentencing, sign a closing
agreement with the Internal Revenue Service, permitting the Internal
Revenue Service to assess (including penalties and interest) and
collect the tax due for the tax years 2010, 2011, 2012, 2013, and
2014.  The closing agreement shall include and take into account
defendant's tax due on unreported income of $294,500; $309,820;
$454,020; $376,880; and $268,800 for the defendant's tax years 2010,
2011, 2012, 2013, and 2014, respectively.  No further credits or
deductions shall be allowed.  The closing agreement shall include the
civil fraud penalty for each year and statutory interest, on the tax
liabilities, as provided by law.

      d.    Defendant will make his best efforts to pay at or
before sentencing all additional taxes and all penalties and interest
assessed by the Internal Revenue Service on the basis of the closing
agreement; and will make his best efforts to promptly pay all
additional taxes and all penalties and interest thereafter determined

1  by the Internal Revenue Service to be owing as a result of any

2  computational error(s).

3          e.    Defendant will not, after signing the closing

4  agreement, file any claim for refund of taxes, penalties, or interest

5  for amounts assessed and collected pursuant to the closing agreement.

6          f.    Defendant gives up any and all objections that could

7  be asserted to the Examination Division of the Internal Revenue

8  Service receiving materials or information obtained during the

9  criminal investigation of this matter, including materials and

10  information obtained through grand jury subpoenas.

THE USAO'S OBLIGATIONS

11

12     5.    The USAO agrees to:

13          a.    Not contest facts agreed to in this agreement.

14          b.    Abide by all agreements regarding sentencing contained

15  in this agreement.

16          c.    At the time of sentencing, provided that defendant

17  demonstrates an acceptance of responsibility for the offenses up to

18  and including the time of sentencing, recommend a two-level reduction

19  in the applicable Sentencing Guidelines offense level, pursuant to

20  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

21  additional one-level reduction if available under that section.

22          d.    Not further criminally prosecute defendant for

23  violations of 18 U.S.C. §§ 1028A, 1341, 1343 and 1344, and 26 U.S.C.

24  §§ 7201 and 7206(1) arising out of defendant's conduct described in

25  the agreed-to factual basis set forth in Exhibit C attached hereto.

26  Defendant understands that the USAO is free to criminally prosecute

27  defendant for any other unlawful past conduct or any unlawful conduct

28  that occurs after the date of this agreement.    Defendant agrees that

5

1  at the time of sentencing the Court may consider the uncharged

2  conduct in determining the applicable Sentencing Guidelines range,

3  the propriety and extent of any departure from that range, and the

4  sentence to be imposed after consideration of the Sentencing

5  Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

6         e.    Recommend that defendant be sentenced to a term of

7  imprisonment no higher than the low end of the applicable Sentencing

8  Guidelines range, provided that the offense level used by the Court

9  to determine that range is 26 or higher and provided that the Court

10 does not depart downward in offense level or criminal history

11 category.  For purposes of this agreement, the low end of the

12 Sentencing Guidelines range is that defined by the Sentencing Table

13 in USSG Chapter 5, Part A.

14                        NATURE OF THE OFFENSES

15     6.    Defendant understands that for defendant to be guilty of

16 the crime charged in count one, that is, wire fraud, in violation of

17 Title 18, United States Code, Section 1343, the following must be

18 true:

19          First, the defendant knowingly participated in a scheme or

20          plan to defraud, or a scheme or plan for obtaining money or

21          property by means of false or fraudulent pretenses,

22          representations, or promises;

23          Second, the statements made or facts omitted as part of the

24          scheme were material; that is, they had a natural tendency

25          to influence, or were capable of influencing, a person to

26          part with money or property;

27          Third, the defendant acted with the intent to defraud; that

28          is, the intent to deceive or cheat; and

6

1        Fourth, the defendant used, or caused to be used,

2        interstate wirings to carry out or attempt to carry out an

3        essential part of the scheme.

4    7.    Defendant understands that for defendant to be guilty of

5    the crime charged in count two, that is, subscription to a false

6    federal income tax return, in violation of Title 26, United States

7    Code, Section 7206(1), the following must be true:

8        First, the defendant made and signed a tax return for the

9        year 2012 that he knew contained false or incorrect

10       information as to a material matter;

11       Second, the return contained a written declaration that it

12       was being signed subject to the penalties of perjury; and

13       Third, in filing the false tax return, the defendant acted

14       willfully.  In order to prove that the defendant acted

15       "willfully," the government must prove beyond a reasonable

16       doubt that the defendant knew federal tax law imposed a

17       duty on him, and the defendant intentionally and

18       voluntarily violated the duty.

19                        PENALTIES AND RESTITUTION

20   8.    Defendant understands that the statutory maximum sentence

21   that the Court can impose for a violation of Title 18, United States

22   Code, Section 1343, is: a 20-year period of imprisonment; a 3-year

23   period of supervised release; a fine of $250,000 or twice the gross

24   gain or gross loss resulting from the offense, whichever is greatest;

25   and a mandatory special assessment of $100.

26   9.    Defendant understands that the statutory maximum sentence

27   that the Court can impose for a violation of Title 26, United States

28   Code, Section 7206(1), is: a 3-year period of imprisonment; a 1-year

1  period of supervised release; a fine of $250,000 or twice the gross
2  gain or gross loss resulting from the offense, whichever is greatest;
3  and a mandatory special assessment of $100.

4      10.   Defendant understands, therefore, that the total maximum
5  sentence for both offenses to which defendant is pleading guilty is:
6  a 23-year period of imprisonment; a 3-year period of supervised
7  release; a fine of $500,000 or twice the gross gain or gross loss
8  resulting from the offenses, whichever is greatest; and a mandatory
9  special assessment of $200.

10     11.   With respect to count one, which charges a violation of
11 Title 18, United States Code, Section 1343, defendant understands
12 that defendant will be required to pay full restitution to the
13 victims of the offense to which defendant is pleading guilty.
14 Defendant agrees that, in return for the USAO's compliance with its
15 obligations under this agreement, the Court may order restitution to
16 persons other than the victims of the offenses to which defendant is
17 pleading guilty and in amounts greater than those alleged in the
18 count to which defendant is pleading guilty.  In particular,
19 defendant agrees that the Court may order restitution to any victim
20 of any of the following for any losses suffered by that victim as a
21 result: (a) any relevant conduct, as defined in USSG § 1B1.3, in
22 connection with the offense to which defendant is pleading guilty;
23 and (b) any charges not prosecuted pursuant to this agreement as well
24 as all relevant conduct, as defined in USSG § 1B1.3, in connection
25 with those charges.  The parties currently believe that the
26 applicable amount of restitution is approximately $6,511,000, but
27 recognize and agree that this amount could change based on facts that
28 come to the attention of the parties prior to sentencing.

1       12.   With respect to count two, which charges a violation of

2   Title 26, United States Code, Section 7206(1), defendant understands

3   and agrees that the Court: (a) may order defendant to pay restitution

4   in the form of any additional taxes that defendant owes to the United

5   States based upon the count of conviction and any relevant conduct;

6   and (b) must order defendant to pay the costs of prosecution, which

7   may be in addition to the statutory maximum fine stated above.

8       13.   Defendant understands that supervised release is a period

9   of time following imprisonment during which defendant will be subject

10  to various restrictions and requirements.   Defendant understands that

11  if defendant violates one or more of the conditions of any supervised

12  release imposed, defendant may be returned to prison for all or part

13  of the term of supervised release authorized by statute for the

14  offense that resulted in the term of supervised release, which could

15  result in defendant serving a total term of imprisonment greater than

16  the statutory maximum stated above.

17      14.   Defendant understands that, by pleading guilty, defendant

18  may be giving up valuable government benefits and valuable civic

19  rights, such as the right to vote, the right to possess a firearm,

20  the right to hold office, and the right to serve on a jury.

21  Defendant understands that once the Court accepts defendant's guilty

22  pleas, it will be a federal felony for defendant to possess a firearm

23  or ammunition.   Defendant understands that the convictions in this

24  case may also subject defendant to various other collateral

25  consequences, including but not limited to revocation of probation,

26  parole, or supervised release in another case and suspension or

27  revocation of a professional license.   Defendant understands that

28

1  unanticipated collateral consequences will not serve as grounds to
2  withdraw defendant's guilty pleas.

3    15.  Defendant understands that, if defendant is not a United
4  States citizen, the felony convictions in this case may subject
5  defendant to: removal, also known as deportation, which may, under
6  some circumstances, be mandatory; denial of citizenship; and denial
7  of admission to the United States in the future.  The Court cannot,
8  and defendant's attorney also may not be able to, advise defendant
9  fully regarding the immigration consequences of the felony conviction
10 in this case.  Defendant understands that unexpected immigration
11 consequences will not serve as grounds to withdraw defendant's guilty
12 pleas.

13                            FACTUAL BASIS

14    16.  Defendant admits that defendant is, in fact, guilty of the
15 offenses to which defendant is agreeing to plead guilty.  Defendant
16 and the USAO agree to the statement of facts provided in Exhibit C
17 attached to this agreement and incorporated herein by reference, and
18 agree that this statement of facts is sufficient to support pleas of
19 guilty to the charges described in this agreement and to establish
20 the Sentencing Guidelines factors set forth in paragraph 18 below but
21 is not meant to be a complete recitation of all facts relevant to the
22 underlying criminal conduct or all facts known to either party that
23 relate to that conduct.

24                          SENTENCING FACTORS

25    17.  Defendant understands that in determining defendant's
26 sentence the Court is required to calculate the applicable Sentencing
27 Guidelines range and to consider that range, possible departures
28 under the Sentencing Guidelines, and the other sentencing factors set

1  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

2  Sentencing Guidelines are advisory only, that defendant cannot have

3  any expectation of receiving a sentence within the calculated

4  Sentencing Guidelines range, and that after considering the

5  Sentencing Guidelines and the other § 3553(a) factors, the Court will

6  be free to exercise its discretion to impose any sentence it finds

7  appropriate up to the maximum set by statute for the crimes of

8  conviction.

9      18.  Defendant and the USAO agree to the following applicable

10  Sentencing Guidelines factors:

11  Count One (18 U.S.C. § 1343)

12  Base Offense Level:              7           USSG § 2B1.1(a)(1)

13  Loss between $3.5 million and
   $9.5 million                   +18          USSG § 2B1.1(b)(1)(J)
14
   Abuse of position of trust     +2                USSG § 3B1.3
15

16  Count Two (26 U.S.C. § 7206(1))

17  Base Offense Level (Tax Loss   22      USSG §§ 2T1.1; 2T4.1(I)
   over $1.5 million):
18
   Unreported Income from
19  Criminal Activity              +2           USSG § 2T1.1(b)(1)

20

21  Defendant and the USAO reserve the right to argue that additional

22  specific offense characteristics, adjustments, and departures under

23  the Sentencing Guidelines are appropriate.  For example, the

24  government reserves the right to argue that an upward adjustment

25  applies under the guidelines applicable to determining the combined

26  offense level for both counts of conviction, USSG § § 3D1.1-3D1.4

27  (the "Multiple Count Guidelines"), and defendant reserves the right

28

1  to argue that no adjustment applies under the Multiple Count

2  Guidelines.

3      19.  Defendant understands that there is no agreement as to

4  defendant's criminal history or criminal history category.

5      20.  Defendant and the USAO reserve the right to argue for a

6  sentence outside the sentencing range established by the Sentencing

7  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

8  (a)(2), (a)(3), (a)(6), and (a)(7).

9  <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

10      21.  Defendant understands that by pleading guilty, defendant

11  gives up the following rights:

12          a.  The right to persist in a plea of not guilty.

13          b.  The right to a speedy and public trial by jury.

14          c.  The right to be represented by counsel -- and if

15  necessary have the court appoint counsel -- at trial.  Defendant

16  understands, however, that, defendant retains the right to be

17  represented by counsel -- and if necessary have the court appoint

18  counsel -- at every other stage of the proceeding.

19          d.  The right to be presumed innocent and to have the

20  burden of proof placed on the government to prove defendant guilty

21  beyond a reasonable doubt.

22          e.  The right to confront and cross-examine witnesses

23  against defendant.

24          f.  The right to testify and to present evidence in

25  opposition to the charges, including the right to compel the

26  attendance of witnesses to testify.

27

28

1          g.    The right not to be compelled to testify, and, if

2    defendant chose not to testify or present evidence, to have that

3    choice not be used against defendant.

4          h.    Any and all rights to pursue any affirmative defenses,

5    Fourth Amendment or Fifth Amendment claims, and other pretrial

6    motions that have been filed or could be filed.

7                    WAIVER OF APPEAL OF CONVICTION

8          22.   Defendant understands that, with the exception of an appeal

9    based on a claim that defendant's guilty pleas were involuntary, by

10   pleading guilty defendant is waiving and giving up any right to

11   appeal defendant's convictions on the offenses to which defendant is

12   pleading guilty.

13             LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

14         23.   Defendant agrees that, provided the Court imposes a total

15   term of imprisonment on both counts of conviction of no more than 78

16   months, defendant gives up the right to appeal all of the following:

17   (a) the procedures and calculations used to determine and impose any

18   portion of the sentence; (b) the term of imprisonment imposed by the

19   Court; (c) the fine imposed by the Court, provided it is within the

20   statutory maximum; (d) the amount and terms of any restitution order,

21   provided it requires payment of no more than $6,511,000 on count one

22   and $1,704,080 on count two; (e) the term of probation or supervised

23   release imposed by the Court, provided it is within the statutory

24   maximum; and (f) any of the following conditions of probation or

25   supervised release imposed by the Court: the conditions set forth in

26   General Orders 318, 01-05, and/or 05-02 of this Court; the drug

27   testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d);

28   the alcohol and drug use conditions authorized by 18 U.S.C.

1  § 3563(b)(7); and any conditions of probation or supervised release
2  agreed to by defendant in paragraph 2 above.

3      24.  The USAO agrees that, provided (a) all portions of the
4  sentence are at or below the statutory maximum specified above and
5  (b) the Court imposes a term of imprisonment of no less than 51
6  months, the USAO gives up its right to appeal any portion of the
7  sentence, with the exception that the USAO reserves the right to
8  appeal the amount of restitution ordered if that amount is less than
9  $6,511,000 on count one and $1,704,080 on count two.

10                 RESULT OF WITHDRAWAL OF GUILTY PLEA

11     25.  Defendant agrees that if, after entering guilty pleas
12  pursuant to this agreement, defendant seeks to withdraw and succeeds
13  in withdrawing either or both of defendant's guilty pleas on any
14  basis other than a claim and finding that entry into this plea
15  agreement was involuntary, then (a) the USAO will be relieved of all
16  of its obligations under this agreement; and (b) should the USAO
17  choose to pursue any charge that was either dismissed or not filed as
18  a result of this agreement, then (i) any applicable statute of
19  limitations will be tolled between the date of defendant's signing of
20  this agreement and the filing commencing any such action; and
21  (ii) defendant waives and gives up all defenses based on the statute
22  of limitations, any claim of pre-indictment delay, or any speedy
23  trial claim with respect to any such action, except to the extent
24  that such defenses existed as of the date of defendant's signing this
25  agreement.

26                 RESULT OF VACATUR, REVERSAL OR SET-ASIDE

27     26.  Defendant agrees that if either count of conviction is
28  vacated, reversed, or set aside, the USAO may: (a) ask the Court to

resentence defendant on the remaining count of conviction, with both
the USAO and defendant being released from any stipulations regarding
sentencing contained in this agreement, (b) ask the Court to void the
entire plea agreement and vacate defendant's guilty plea on the
remaining count of conviction, with both the USAO and defendant being
released from all their obligations under this agreement, or
(c) leave defendant's remaining conviction, sentence, and plea
agreement intact.  Defendant agrees that the choice among these three
options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of
all required certifications by defendant and defendant's counsel, and
approval of the United States Department of Justice, Tax Division,
and subsequent signature and execution by an Assistant United States
Attorney.

BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the
effective date of this agreement, knowingly violates or fails to
perform any of defendant's obligations under this agreement ("a
breach"), the USAO may declare this agreement breached.  All of
defendant's obligations are material, a single breach of this
agreement is sufficient for the USAO to declare a breach, and
defendant shall not be deemed to have cured a breach without the
express agreement of the USAO in writing.  If the USAO declares this
agreement breached, and the Court finds such a breach to have
occurred, then: (a) if defendant has previously entered guilty pleas
pursuant to this agreement, defendant will not be able to withdraw

15

the guilty pleas, and (b) the USAO will be relieved of all its

obligations under this agreement.

29. Following the Court's finding of a knowing breach of this

agreement by defendant, should the USAO choose to pursue any charge

that was not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of

limitations is tolled between the date of defendant's signing of this

agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on

the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the

extent that such defenses existed as of the date of defendant's

signing this agreement.

c. Defendant agrees that: (i) any statements made by

defendant, under oath, at the guilty plea hearing (if such a hearing

occurred prior to the breach); (ii) the agreed to factual basis

statement in this agreement; and (iii) any evidence derived from such

statements, shall be admissible against defendant in any such action

against defendant, and defendant waives and gives up any claim under

the United States Constitution, any statute, Rule 410 of the Federal

Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

Procedure, or any other federal rule, that the statements or any

evidence derived from the statements should be suppressed or are

inadmissible.

### COURT AND PROBATION OFFICE NOT PARTIES

30. Defendant understands that the Court and the United States

Probation Office are not parties to this agreement and need not

16

1 accept any of the USAO's sentencing recommendations or the parties'
2 agreements to facts or sentencing factors.

3     31.  Defendant understands that both defendant and the USAO are
4 free to: (a) supplement the facts by supplying relevant information
5 to the United States Probation Office and the Court, (b) correct any
6 and all factual misstatements relating to the Court's Sentencing
7 Guidelines calculations and determination of sentence, and (c) argue
8 on appeal and collateral review that the Court's Sentencing
9 Guidelines calculations and the sentence it chooses to impose are not
10 error, although each party agrees to maintain its view that the
11 calculations in paragraph 18 are consistent with the facts of this
12 case.  While this paragraph permits both the USAO and defendant to
13 submit full and complete factual information to the United States
14 Probation Office and the Court, even if that factual information may
15 be viewed as inconsistent with the facts agreed to in this agreement,
16 this paragraph does not affect defendant's and the USAO's obligations
17 not to contest the facts agreed to in this agreement.

18     32.  Defendant understands that even if the Court ignores any
19 sentencing recommendation, finds facts or reaches conclusions
20 different from those agreed to, and/or imposes any sentence up to the
21 maximum established by statute, defendant cannot, for that reason,
22 withdraw defendant's guilty pleas, and defendant will remain bound to
23 fulfill all defendant's obligations under this agreement.  Defendant
24 understands that no one -- not the prosecutor, defendant's attorney,
25 or the Court -- can make a binding prediction or promise regarding
26 the sentence defendant will receive, except that it will be within
27 the statutory maximum.

28

NO ADDITIONAL AGREEMENTS

33.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

EILEEN M. DECKER
United States Attorney


RANEE A. KATZENSTEIN                         Date  1/18/17
Assistant United States Attorney


JONATHAN TODD SCHWARTZ                        Date  11.7.16
Defendant


NATHAN J. HOCHMAN                             Date  11/7/16
Attorney for Defendant
JONATHAN TODD SCHWARTZ

///

///

///

///

18

1                          CERTIFICATION OF DEFENDANT

2          I have read this agreement in its entirety.  I have had enough

3      time to review and consider this agreement, and I have carefully and

4      thoroughly discussed every part of it with my attorney.  I understand

5      the terms of this agreement, and I voluntarily agree to those terms.

6      I have discussed the evidence with my attorney, and my attorney has

7      advised me of my rights, of possible pretrial motions that might be

8      filed, of possible defenses that might be asserted either prior to or

9      at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10     of relevant Sentencing Guidelines provisions, and of the consequences

11     of entering into this agreement.  No promises, inducements, or

12     representations of any kind have been made to me other than those

13     contained in this agreement.  No one has threatened or forced me in

14     any way to enter into this agreement.  I am satisfied with the

15     representation of my attorney in this matter, and I am pleading

16     guilty because I am guilty of the charges and wish to take advantage

17     of the promises set forth in this agreement, and not for any other

18     reason.

19

20     JONATHAN TODD SCHWARTZ                    Date    11.7.16
       Defendant

21

22     ///

23     ///

24     ///

25     ///

26     ///

27

28

                                       19

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JONATHAN TODD SCHWARTZ's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          11/7/16
NATHAN J. HOCHMAN                         Date
Attorney for Defendant
JONATHAN TODD SCHWARTZ

1        **EXHIBIT A**

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,        CR No. 16-

11          Plaintiff,               I N F O R M A T I O N

12          v.                       [18 U.S.C. § 1343: Wire Fraud; 26
                                     U.S.C. § 7206(1): Subscribing to a
13  JONATHAN TODD SCHWARTZ,          False Federal Tax Return]

14          Defendant.

15

16      The United States Attorney charges:

17                  COUNT ONE

18              [18 U.S.C. § 1343]

19  A.   INTRODUCTORY ALLEGATIONS

20      1.   At all times relevant to this Information:

21          a.   Defendant JONATHAN TODD SCHWARTZ ("defendant

22  SCHWARTZ") resided in Agoura Hills, within the Central District of

23  California.

24          b.   Defendant SCHWARTZ was a member of GSO Business

25  Management, LLC ("GSO"), a business management firm based in Sherman

26  Oaks, California.  GSO provided financial guidance, including

27  managing bank accounts, providing accounts payable services on

28  clients' behalf, and preparing short term and long term budgets.

B.   THE SCHEME TO DEFRAUD

2.   Beginning at least as early as in or about March 2009 and continuing to at least May 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant SCHWARTZ, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud GSO and clients of GSO, including Clients Numbers 1–6, as to material matters, and to obtain money and property from GSO and clients of GSO by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

3.   The fraudulent scheme operated, in substance, as follows:

a.   Defendant SCHWARTZ would represent to GSO's clients that he would only access their bank accounts with their approval and for purposes established by the clients, for instance to pay the clients' bills or to obtain spending money for the clients to use.

b.   Without the knowledge, consent, or approval of the clients, defendant SCHWARTZ would submit requests for cash to the bank at which the clients' accounts were maintained.  Defendant SCHWARTZ would sometimes instruct the bank to deliver the cash to him at GSO; sometimes defendant SCHWARTZ would inform the bank that he would pick up the cash at the bank.

c.   Defendant SCHWARTZ would falsify and cause to be falsified the account records provided to clients in order to conceal the unauthorized takings.  For instance, defendant SCHWARTZ would instruct his assistants to "remove cash line item" from the monthly account statements provided to one client; falsely code the unauthorized cash withdrawals as "sundry/personal expenses" on the accounting records for that client; and falsely code unauthorized

2

1  cash withdrawals as home renovations on the accounting records GSO

2  maintained for another client who, at the time, was rebuilding his

3  house.

4        d.   In some instances, defendant SCHWARTZ would forge the

5  signature of the client on cash receipts, thereby creating the false

6  and fraudulent pretense and representation that the client had

7  received the proceeds of the unauthorized withdrawal.

8        e.   When confronted about the missing cash, defendant

9  SCHWARTZ would falsely tell the clients and their representatives

10  that the missing cash had been invested in accordance with the

11  clients' directions.  For instance, defendant SCHWARTZ falsely stated

12  that the missing money belonging to one client had been invested in

13  illegal marijuana businesses pursuant to that client's instructions.

14        f.   Defendant SCHWARTZ would conceal from the clients and

15  GSO that he had taken the cash he obtained from the clients' accounts

16  and used it to pay for his own expenses.

17        g.   In some instances, defendant SCHWARTZ would obtain

18  money directly from clients based on the false representation and

19  promise that he would invest the money on behalf of the clients and

20  would provide the interest from the investments to the clients.  In

21  fact, defendant SCHWARTZ would not invest the money as promised and,

22  instead, would misappropriate the clients' money and use it to pay

23  defendant SCHWARTZ's own expenses without the clients' knowledge or

24  consent.

25      4.   As a result of the scheme described above, defendant

26  SCHWARTZ fraudulently obtained $1,009,000 from Client Number 1;

27  approximately $4.8 million from Client Number 2; $737,500 from Client

28

1   Number 3; $122,500 from Client Number 4; $425,000 from Client Number
2   5; and $100,000 from Client Number 6.

3   B      THE USE OF THE WIRES

4        5.      On or about December 11, 2013, within the Central District
5   of California, and elsewhere, for the purpose of executing the above-
6   described scheme to defraud, defendant SCHWARTZ transmitted, caused
7   the transmission, and aided and abetted the transmission of an e-mail
8   sent from defendant SCHWARTZ's GSO e-mail account in California to
9   City National Bank, in California, via a Network Solutions, LLC,
10  server located in Jacksonville, Florida.  The e-mail approved an
11  attached "Request For Cash/Cashier's Check/Foreign Currency" for
12  $97,500 in cash to be withdrawn from the account of Client Number 2,
13  which request was submitted by defendant SCHWARTZ and stated that
14  defendant SCHWARTZ would pick up the cash at the Beverly Hills Branch
15  of the bank.

1

                              COUNT TWO

2

                          [26 U.S.C. § 7206(1)]

3       6.   On or about October 13, 2013, in Los Angeles County, within

4   the Central District of California, and elsewhere, defendant JONATHAN

5   TODD SCHWARTZ ("defendant SCHWARTZ"), a resident of Agoura Hills,

6   California, willfully made and subscribed to a materially false

7   United States Individual Income Tax Return, Form 1040, for calendar

8   year 2012, which was verified by a written declaration that it was

9   made under the penalties of perjury, and which was filed with the

10  Internal Revenue Service, which return defendant SCHWARTZ did not

11  believe to be true as to every material matter, in that, on such Form

12  1040, defendant SCHWARTZ reported, on line 22, that he had total

13  income in the amount of $626,228, when, as defendant SCHWARTZ then

14  well knew and believed, his total income for that year was

15  substantially higher than the amount he reported.

16                              EILEEN M. DECKER
                                United States Attorney
17

18

19                              LAWRENCE S. MIDDLETON
                                Assistant United States Attorney
20                              Chief, Criminal Division

21                              GEORGE S. CARDONA
                                Assistant United States Attorney
22                              Chief, Major Frauds Section

23                              RANEE A. KATZENSTEIN
                                Assistant United States Attorney
24                              Deputy Chief, Major Frauds Section

25

26

27

28

                                    5



**UNITED STATES DEPARTMENT OF JUSTICE**
**UNITED STATES ATTORNEY**
**CENTRAL DISTRICT OF CALIFORNIA**

<u>FINANCIAL STATEMENT</u>

**NOTE: USE ADDITIONAL SHEETS OR CONTINUE ON REVERSE SIDE OF FORM IF ADDITIONAL SPACE IS NEEDED.**

The principle purpose for gathering this information is to evaluate your capacity to pay any Government claim or judgment against you. If the requested information is not furnished, the U.S. Department of Justice has the right to such disclosure of the information by legal methods.

| | |
|---|---|
| 1. NAME: | 2. DRIVER LICENSE #: |

3. OTHER NAMES USED:

| | |
|---|---|
| 4. BIRTH DATE: | 5. SOCIAL SECURITY NUMBER: |

6. HOME ADDRESS:

| CITY: | STATE: | ZIP: |
|---|---|---|

7. MAILING ADDRESS IF DIFFERENT FROM HOME ADDRESS:

8. HOW LONG HAVE YOU LIVED IN THE ADDRESS ABOVE?

| | |
|---|---|
| 9. HOME PHONE NUMBER: (     ) | WORK PHONE NUMBER: (     ) |
| CELL PHONE NUMBER: (     ) | EMAIL ADDRESS: |

IF YOU HAVE NO PHONE, GIVE THE NAME OF A PERSON THROUGH WHOM YOU CAN BE CONTACTED

NAME & NUMBER:

10. DO YOU PLAN TO MOVE FROM YOUR CURRENT RESIDENCE? ☐ YES   ☐ NO

11. **IF YES**, DATE YOU PLAN TO MOVE AND WHERE:

12. ☐ SINGLE  ☐ MARRIED  ☐ SEPARATED   13. NAME OF SPOUSE:_____

☐ WIDOWED ☐ DIVORCED:_____   13a. SPOUSE D.O.B.:_____  13b. SPOUSE SSN:_____

14. ADDRESS AND PHONE NUMBER OF SPOUSE IF DIFFERENT FROM YOURS:

15. LIST CHILDREN OR OTHER RELATIVES TO WHOM YOU CONTRIBUTE FINANCIAL SUPPORT:

| NAME | RELATIONSHIP | AGE | DO THEY LIVE WITH YOU? |
|---|---|---|---|
| | | | ☐ Yes    ☐ No |
| | | | ☐ Yes    ☐ No |
| | | | ☐ Yes    ☐ No |
| | | | ☐ Yes    ☐ No |

EXHIBIT
B

| 16. FATHER'S NAME: | 16a. PHONE NUMBER: (    ) |
|---|---|
| 16b. ADDRESS: | |
| 17. MOTHER'S NAME: | 17a. PHONE NUMBER: (    ) |
| 17b. ADDRESS: | |

18. EDUCATION : □ LESS THAN 12 YEARS    □ HIGH SCHOOL DIPLOMA    □ GED  □ VOCATIONAL SCHOOL
_____ YEARS OF COLLEGE    _____ YEARS OF POST-GRADUATE

19 .DEGREES:

20. ARE YOU CURRENTLY AN ACTIVE MEMBER OF THE ARMED FORCES, INCLUDING NATIONAL GUARD OR RESERVES?   □ YES  □ NO
IF YES, GIVE NAME, ADDRESS AND TELEPHONE NUMBER OF YOUR UNIT AND HOW MANY YEARS REMAINING IN YOUR ENLISTMENT.

21. ARE YOU A MEMBER OF A UNION? □ YES   □ NO.  IF YES, GIVE UNION NAME, ADDRESS AND PHONE NUMBER:

22. OCCUPATION:

23. ARE YOU CURRENTLY WORKING: □ YES   □ NO      a. HOW LONG WITH THIS EMPLOYER?_____.

23b: NAME OF EMPLOYER: _____      c. EMPLOYER ADDRESS: _____

d. TELEPHONE NUMBER: (     )

24. HOW OFTEN ARE YOU PAID? □ WEEKLY  □ BI-WEEKLY  □ MONTHY  □ OTHER_____.

24a. HOW MUCH ARE YOU PAID PER PAY PERIOD? **ATTACH A COPY OF MOST RECENT PAY STUB**

| | |
|---|---|
| **Gross Pay** | $ |
| **Taxes and Other Deductions** | |
| **State** | $ |
| **Federal** | $ |
| **Social Security** | $ |
| **Medicare** | $ |
| **Life** | $ |
| **Health** | $ |
| **401K** | $ |
| **Bonds, Savings, Union Dues (Specify)** | $ |
| **Other (Specify)** | $ |
| | $ |
| **NET TAKE HOME PAY** | $ |

25. ON WHAT DAYS OF THE WEEK ARE YOU PAID?

26. DO YOU RECEIVE UNEMPLOYMENT BENEFITS NOW? □ YES  □ NO
IF **YES**, STATE HOW MANY WEEKS OF ELIGIBILITY DO YOU HAVE LEFT:_____.
IF **NO**, HAVE YOU APPLIED FOR THEM? □ YES  □ NO

27. DO YOU HAVE A JOB WHICH YOU EXPECT TO TAKE IN THE FUTURE? □ YES  □ NO
**IF YES**, GIVE THE EMPLOYER'S NAME, ADDRESS AND PHONE NUMBER:

28. **IF YOU ARE UNEMPLOYED**, WHERE DO YOU GET THE MONEY TO SUPPORT YOURSELF AND HOW MUCH DO
YOU RECEIVE FROM EACH SOURCE? **Attach copy of Unemployment Benefits Letter**

_____ AMOUNT $_____ □ WEEKLY □ MONTHLY

_____ AMOUNT $_____ □ WEEKLY □ MONTHLY

29. LIST ALL EMPLOYMENT WITHIN THE LAST 5 YEARS:

| EMPLOYER NAME | ADDRESS | PHONE # | DATES OF EMPLOYMENT |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

30. DO YOU RECEIVE AT THIS TIME, OR DO YOU EXPECT TO RECEIVE IN THE FUTURE, ANY PENSION, DISABILITY
COMPENSATION, RETIREMENT PAY, CIVIL SERVICE RETIREMENT, SOCIAL SECURITY OR OTHER BENEFITS FROM
THE UNITED STATES OR ANY OTHER GOVERNMENTAL SOURCE?

□ YES  □ NO     AMOUNT $_____ □ WEEKLY □ MONTHLY          **Attach copy of benefits statement**

31. DO YOU OR YOUR SPOUSE RECEIVE CHILD SUPPORT PAYMENTS?
□ YES  □ NO     AMOUNT $_____ □ WEEKLY □ MONTHLY

32. DO YOU RECEIVE AID TO FAMILIES WITH DEPENDENT CHILDREN OR ANY OTHER TYPE OF ASSISTANCE FROM
THE UNITED STATES OR ANY OTHER SOURCE? □ YES  □ NO    AMOUNT $_____ □ WEEKLY □ MONTHLY

33. DOES YOUR SPOUSE WORK? □ YES  □ NO
IF  SO, GIVE THE EMPLOYERS NAME, ADDRESS AND TELEPHONE NUMBER:

34. HOW MUCH DOES HE/SHE MAKE? $_____     PER □ WEEK    □ MONTH     □ YEAR

35. WHAT IS HIS/HER TAKE HOME PER PAY PERIOD? $_____

36. HAVE YOU, YOUR SPOUSE OR DEPENDENTS HAD A CHECKING ACCOUNT IN THE PAST 5 YEARS?  □ YES  □ NO
**IF YES**, GIVE NAMES AND ADDRESSES OF BANKS OR CREDIT UNIONS AND ACCOUNT NUMBERS:

| NAME OF INSTITUTION | ADDRESS | ACCOUNT NUMBER |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

3

37. WHAT ARE THE NAME(S) ON THE CHECKING ACCOUNT(S)?

38. IS THE CHECKING ACCOUNT OPEN? □ YES □ NO   ACCOUNT BALANCE: $_____   Attach copy of Bank Statement

39. HAVE YOU OR YOUR SPOUSE OR DEPENDENTS HAD A SAVINGS ACCOUNT IN THE PAST TWO YEARS? □ YES □ NO
**IF YES**, GIVE NAMES AND ADDRESSES OF BANKS OR CREDIT UNIONS AND ACCOUNT NUMBERS:

| NAME OF INSTITUTION | ADDRESS | ACCOUNT NUMBER |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

40. WHAT ARE THE NAMES ON THE SAVINGS ACCOUNT?

41. HOW MUCH MONEY IS IN EACH SAVINGS ACCOUNT? $_____

42. DO YOU HAVE AN INDIVIDUAL RETIREMENT ACCOUNT (IRA) OR CERTIFICATES OF DEPOSIT? □ YES □ NO
**IF YES**, GIVE NAME OF FINANCIAL INSTITUTION(S), ADDRESS, ACCOUNT NUMBER(S), AND PRESENT BALANCE(S):

| NAME OF INSTITUTION | ADDRESS | ACCOUNT NUMBER | BALANCE |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

*IF INFORMATION DOES NOT FIT, PLEASE USE THE BACK OF THE PAGE.*

43. DO YOU HAVE A MOTOR VEHICLE? □ YES □ NO

44. ARE YOU IN POSSESION OF A MOTOR VEHICLE THAT YOU DO NOT OWN? □ YES □ NO

45. IF YOU ANSWERED YES TO EITHER, QUESTION 43 OR 44, STATE THE MAKE, MODEL, VEHICLE IDENTIFICATION NUMBER, LICENSE NUMBER, LOCATION AND VALUE OF EACH VEHICLE, AND NAMES OF THE REGISTERED AND LEGAL OWNERS.

| | VEHICLE #1 | VEHICLE #2 | VEHICLE #3 | VEHICLE #4 |
|---|---|---|---|---|
| MAKE: | | | | |
| MODEL/YEAR: | | | | |
| VIN # | | | | |
| LICENSE # | | | | |
| LOCATION | | | | |
| VALUE $ | | | | |
| REGISTERED OWNER | | | | |
| LEGAL OWNER | | | | |

46. ARE YOU BUYING A VEHICLE, STATE:
a. HOW MUCH IS OWED ON IT?_____
b. WHERE DO YOU GET THE MONEY TO MAKE THE PAYMENT ON THE VEHICLE?_____

47. DOES ANYONE OWE YOU MONEY OR IS ANYONE HOLDING MONEY ON YOUR BEHALF? □ YES  □ NO
**IF YES**, STATE AMOUNT, NAME, ADDRESS AND TELEPHONE NUMBER AND WHETHER A JUDGMENT WAS ENTERED
AGAINST THAT PERSON:

48. WHY DOES THIS PERSON OWE YOU MONEY OR HOLD MONEY FOR YOU?

49. DO YOU RENT THE PREMISES WHERE YOU LIVE? □ YES  □ NO
AMOUNT YOU PAY $_____    □ MONTHLY □ OTHER    Attach a copy of receipt

NAME AND ADDRESS OF LANDLORD:

50. IF YOU NEITHER OWN OR RENT AND YOU ARE NOT PURCHASING YOUR PROPERTY, THEN STATE THE NAME OF
THE OWNER OF THE PROPERTY IN WHICH YOU LIVE AND THE ARRANGEMENT BY WHICH YOU OCCUPY THE
PREMISES WITHOUT PAYMENT.

51. DO YOU OWN OR ARE YOU PURCHASING ANY REAL ESTATE, **INCLUDING YOUR RESIDENCE** AND ANY OIL, GAS
AND MINERAL INTEREST? □ YES  □ NO                **IF YES,** STATE FOR EACH ITEM OF PROPERTY:

| |
|---|
| **(a)** ADDRESS: |
| (b) DESCRIPTION OF PROPERTY: |
| (c) JOINT OWNER: |
| (d) AMOUNT OF INCOME RECEIVED FROM PROPERTY INTEREST(S) $ |
| (e) NAME OF SELLER: |
| (f) VALUE: _____    (g) PRICE: _____    (h) PRINCIPLA STILL OWED: _____ |

52. IF ANY OF THE REAL ESTATE IS ENCUMBERED BY ANY TYPE OF LIEN OR MORTGAGE, THEN STATE:

| | **ITEM NUMBER 1** | **ITEM NUMBER 2** |
|---|---|---|
| Description of each property encumbered (use attachments, if necessary) | | |
| Nature or type of encumbrance | | |
| Date of encumbrance | | |
| Amount of encumbrance | | |
| **Name and Address of holder of encumbrance** | | |

53. ARE YOU SELLING ANY REAL ESTATE UNDER CONTRACT? □ YES  □ NO

| | |
|---|---|
| (a) ADDRESS: | |
| (b) NAME OF BUYER: | (c) VALUE:$ |
| (d) CONTRACT PRICE: $ | (e) PRINCIPLE STILL OWED: $ |
| (f) NEXT PAYMENT DATE: | (g) AMOUNT OF NEXT PAYMENT: $ |

54. DO YOU RENT ANY PROPERTY TO OTHERS? ☐ YES ☐ NO     **IF YES,** STATE FOR EACH UNIT RENTED:

| | |
|---|---|
| NAME OF RENTER: | RENT PAID: $ |

| |
|---|
| ADDRESS OF RENTED PROPERTY: |

| |
|---|
| WHEN IS RENT PAYABLE? |

55. DO YOU, YOUR SPOUSE OR DEPENDENTS OWN ANY STOCKS, BONDS OR OTHER SECURITIES? ☐ YES ☐ NO
**IF YES,** STATE:

| Stocks/Bonds Securities | Name/Address | Present Location | Number of Shares | Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| United States Savings Bonds | Market Value |
|---|---|
| | |
| | |
| | |

56. DO YOU, YOUR SPOUSE OR YOUR DEPENDENTS RENT OR USE A SAFE DEPOSIT BOX, EITHER ALONE OR WITH ONE OR MORE PERSONS? ☐ YES ☐ NO
**IF YES,** STATE WHERE THE SAFE DEPOSIT BOX IS LOCATED, IN WHOSE NAME(S) IT IS LISTED, HOW IT IS NUMBERED OR OTHERWISE IDENTIFIED AND GIVE ITS CONTENTS, THE OWNERSHIP AND VALUE:

57. IF YOU HAVE INTEREST IN ANY PENSION PLAN, RETIREMENT FUND, OR PROFIT SHARING PLAN, STATE:

| |
|---|
| (a) NAME AND ADDRESS OF ADMINISTRATOR OF PLAN: |
| (b) PRESENT VALUE OF YOUR INTEREST IN THE PLAN: $ _____   As of: _____ |
| (c) NATURE OF PLAN: |
| (d) DESCRIPTION OF TERMS UNDER WHICH YOU MAY RECEIVE MONEY OR PROPERTY PURSUANT TO THE PLAN: |

58. WILL YOU RECEIVE, OR DO YOU ANTICIPATE THAT YOU MIGHT RECEIVE, ANY TYPE OF BONUS AT THE END OF A FISCAL QUARTER OR THE YEAR, ON A DEFERRED COMMISSION, OR BOTH?

59. DO YOU HAVE ANY INCOME PROTECTION INSURANCE, OR ACCIDENT INSURANCE? ☐ YES ☐ NO
**IF YES,** STATE COMPANY NAME, ADDRESS, AND PHONE NUMBER:

60. DO YOU HAVE ANY LIFE INSURANCE POLICIES? ☐ YES  ☐ NO    **IF YES**, STATE AND **ATTACH COPY OF POLICIES**:

| (a) COMPANY NAME, ADDRESS, PHONE NUMBER: |
| --- |
| (b) TYPE OF INSURANCE (TERM, WHOLE, LIFE, ETC.) |
| (c) POLICY NUMBER(S): |
| (d) FACE VALUE AMOUNT(S): |
| (e) CASH SURRENDER VALUE: |
| (f) OUTSANDING LOANS ON POLICY(S): |

61. LIST ALL PERSONAL PROPERTY OWNED BY YOU OR YOUR SPOUSE:

| PROPERTY ITEM | DESCRIPTION | LOCATION | OWNED BY: | FAIR MARKERT VALUE |
| --- | --- | --- | --- | --- |
| TV (state how many) | | | | |
| Computer Equipment | | | | |
| Recording Camera | | | | |
| Furniture | | | | |
| Jewelry | | | | |
| | | | | |
| | | | | |
| Antiques | | | | |
| | | | | |
| Collectables: Stamps, art-work, etc | | | | |
| | | | | |
| Tools, Equipment | | | | |
| Boats | | | | |
| Aircrafts | | | | |
| Trailers/Campers | | | | |
| Motorcycles | | | | |
| ATVs | | | | |
| Sporting Goods | | | | |
| Lawn Mower/ Tractor | | | | |
| Farm Equipment | | | | |
| | | | | |
| Other | | | | |
| | | | | |
| | | | | |
| | | | | |

Case 2:17-cr-00022-DMG    Document 6    Filed 01/18/17    Page 33 of 40    Page ID #:46

62. DATE LAST FEDERAL INCOME TAX RETURN WAS FILED (APPROXIMATELY): _____
AMOUNT OF GROSS INCOME REPORTED: $ _____

63. DO YOU EXPECT TO GET AN INCOME TAX REFUND THIS YEAR? ☐ YES ☐ NO
**IF YES**, GIVE APPROXIMATE AMOUNT YOU EXPECT TO RECEIVE: $ _____

64. LIST ALL TRANSFERS OF PROPERTY INCLUDING CASH (BY LOANS, GIFTS, SALE, ETC.) THAT YOU HAVE MADE
WITHIN THE LAST FIVE (5) YEARS (ITEMS OF $1,000.00 OR MORE):

| DATE | AMOUNT | PROPERTY TRANSFERRED | TO WHOM |
|------|--------|----------------------|---------|
|      |        |                      |         |
|      |        |                      |         |
|      |        |                      |         |

65. ARE YOU A TRUSTEE, EXECUTOR, BENEFICIARY OR ADMINISTRATOR UNDER ANY WILL OR TESTAMENT,
INSURANCE POLICY OR TRUST AGREEMENT? ☐ YES ☐ NO
**IF YES**, GIVE DETAILS:


66. IS THERE ANY LIKELIHOOD YOU WILL RECEIVE ANY INHERITANCE? ☐ YES ☐ NO
**IF YES**, FROM WHOM? (Name, address, and phone number)


67. ARE YOU INVOLVED IN A LAWSUIT IN WHICH YOU MIGHT RECEIVE MONEY OR SOMETHING OF VALUE? ☐ YES ☐ NO
**IF YES**, STATE WHERE THE SUIT IS FILED AND WHAT IT INVOLVES: (include Court Number and Caption)


68. IF YOU NOW HAVE ANY CLAIMS FOR MONEY AGAINST OTHERS BY REASON OF NOTES, CLAIMS FOR DAMAGES,
OR THE LIKE, THEN STATE:

| COMPLETE DESCRIPTION OF CLAIM | NAME AND ADDRESS OF PERSON INDEBTED TO YOU | AMOUNT DUE ON CLAIM |
|-------------------------------|--------------------------------------------|---------------------|
|                               |                                            |                     |
|                               |                                            |                     |
|                               |                                            |                     |

69. DO YOU RECEIVE OR, UNDER ANY CIRCUMSTANCES, EXPECT TO RECEIVE BENEFITS FROM ANY ESTABLISHED
TRUST, FROM A CLAIM FOR COMPENSATION OR DAMAGES, OR FROM A CONTINGENT OR FUTURE INTEREST IN
PROPERTY OF ANY KIND? ☐ YES ☐ NO
**IF YES**, GIVE DETAILS:


70. DO YOU HAVE ANY OUTSTANDING LOANS PAYABLE TO BANKS, FINANCE COMPANIES, CREDIT UNIONS, ETC?
☐ YES ☐ NO    **IF YES**, GIVE DETAILS:

| OWED TO: | PURPOSE | AMOUNT | PAYMENT | BALANCE |
|----------|---------|--------|---------|---------|
|          |         |        |         |         |
|          |         |        |         |         |
|          |         |        |         |         |
|          |         |        |         |         |

71. ARE YOU SELF-EMPLOYED OR DO YOU OWN ALL OR PART OF A BUSINESS AS SOLE OWNER, PARTNER, STOCKHOLDER, OR OTHERWISE? ☐ YES ☐ NO   **IF YES**, STATE THE:

| |
|---|
| NAME AND ADDRESS OF THE BUSINESS: |
| STATE THE NATURE AND VALUE OF YOUR INTEREST: |
| HOW AND WHEN DO YOU DRAW MONEY FROM IT? |
| INCOME RECEIVED FROM THAT BUSINESS LAST YEAR: $ |
| INCOME RECEIVED FROM THAT BUSINESS DURING THE LAST 3 MONTHS: $ |
| YOUR ESTIMATE OF THE VALUE OF THE BUSINESS: $ |
| EACH POSITION THAT YOU OR YOUR SPOUSE HOLD IN CONNECTION WITH THAT BUSINESS: |

72. FOR ANY BANK OR OTHER INSTITUTION AT WHICH THE BUSINESS MAINTAINS ANY TYPE OF ACCOUNT, STATE:

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT | ACCOUNT BALANCE | AVERAGE BALANCE |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

73. IF ANY ARTICLES OF INCORPORATION OR PARTNERSHIP, OR CERTIFICATES OF DOING BUSINESS UNDER ANY NAME WERE FILED WITH ANY GOVERNMENTAL AGENCY BY ANY BUSINESS NAMED ABOVE STATE:

| |
|---|
| (a) NATURE OF DOCUMENT FILED: |
| (b) LOCATION OF OFFICE WHERE FILED: |
| (c) DATE OF FILING: |

74. GIVE AN ACCURATE ACCOUNT OF THE FINANCIAL CONDITION OF THIS BUSINESS FOR THE LAST THREE (3) YEARS. **ATTACH A STATEMENT** OF ASSETS, INVENTORIES, LIABILITIES, GROSS AND NET INCOME, THE AMOUNT OF ANY UNDISTRIBUTED PROFITS IN THE BUSINESS, AND A **COPY OF THE TAX RETURN** FOR THE PREVIOUS YEAR:

75. LIST CREDITORS TO WHOM YOU OWE MONEY (INCLUDING JUDGMENTS, CREDIT CARD DEBTS, LOANS, DOCTOR BILLS, ETC.: (Even if disclosed above).

| CREDITOR | MONTHLY PAYMENT | BALANCE OWING |
|---|---|---|
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| | | |
| | | |
| **TOTALS** | $ | $ |

76. MONTHLY INCOME AND EXPENSES OF SELF, SPOUSE AND DEPENDENTS, OR ANY INDIVIDUAL SHARING YOUR HOME:

| **LIST ALL MONTHLY INCOME RECEIVED (Even if disclosed previously)** | | **LIST ALL MONTHLY EXPENSES (Even if disclosed previously)** | |
|---|---|---|---|
| Take Home Pay | | Rent/Mortgage Payments | $ |
| Self: | $ | | |
| Spouse: | $ | Real Estate Taxes | $ |
| Dependents | $ | Vehicle Payment | $ |
| Other | $ | Gasoline | $ |
| Part-Time Job | $ | | |
| Overtime (Est. if necessary) | $ | Food (Home, work, school) | $ |
| Interest/Dividends | $ | Water | $ |
| Support Alimony | $ | Natural Gas | $ |
| Pension/Social Security | $ | Electric | $ |
| Social Services | $ | Telephone | $ |
| Food Stamps | $ | Cable TV/Satellite TV | $ |
| Rent Income | $ | Other Utilities - _____ | $ |
| Benefits from U.S. | $ | Insurance | $ |
| Disability Compensation | $ | Medical | $ |
| Retirement Pay | $ | Transportation | $ |
| Military Pay | $ | Clothing | $ |
| Commissions | $ | Daycare/Babysitter | $ |
| Other (List) | $ | Tuition | $ |
| | $ | Child Support/Alimony | $ |
| | $ | Entertainment | $ |
| | $ | Personal Care | $ |
| | $ | Dry Cleaning/Laundromat | $ |
| | $ | Gifts | $ |
| | $ | Newspaper/Magazine | $ |
| | $ | Church/Charities | $ |
| | $ | OTHER | $ |
| | $ | | $ |
| **TOTAL MONTHLY INCOME** | $ | **TOTAL MONTHLY EXPENSES** | $ |

10

PLEASE READ CARFULLY BEFORE SIGNING:

    WITH KNOWLEDGE OF THE PENALTIES FOR FALSE STATEMENTS PROVIDED BY TITLE 18, UNITED STATES CODE SECTION 101 (FINE AND/OR UP TO FIVE YEARS IMPRISONMENT) AND WITH KNOWLEDGE THAT THIS FINANCIAL STATEMENT IS SUBMITTED BY ME TO AFFECT ACTION BY THE UNITED STATES DEPARTMENT OF JUSTICE, I HERBY CERTIFY THAT THE ABOVE STATEMENT IS TRUE AND THAT IT IS A COMPLETE STATEMENT OF ALL MY INCOME AND ASSETS, REAL AND PERSONAL, WHETHER HELD IN MY NAME OR BY ANY OTHER.

_____          _____
DATE                                                  SIGNATURE

    IF YOU WERE ASSISTED BY SOMEONE IN FILLING OUT THIS FINANCIAL STATEMENT, PLEASE STATE NAME AND RELATIONSHIP, AND HAVE THE PERSON SIGN BELOW.

Name: _____

Relationship: _____

Signature: _____

### PROPOSAL OF PAYMENT

I PROPOSE TO PAY MY DEBT IN MONTHLY INSTALLMENTS OF $_____ BEGINNING _____ ,

WITH AN IMMEDIATE PAYMENT OF $_____ .

---

&#9758;  **ATTACHMENTS REQUIRED:**

☐ COPY OF TAX RETURNS FOR LAST 2 YEARS.

☐ PROOF OF ALL CURRENT EXPENSES THAT YOU PAID FOR THE LAST 3 MONTHS, INCLUDING UTILITIES, RENT, INSURANCE, PROPERTY TAXES, ETC.

☐ PROOF OF ALL NON-BUSINESS TRANSPORTATION EXPENSES (E.G CAR PAYMENT, LEASE PAYMENTS, FUEL, OIL, INSURANCE, PARKING, REGISTRATION)

☐ PROOF OF ALL PAYMENTS FOR HEALTH CARE, INCLUDING HEALTH INSURANCE PREMIUMS, CO-PAYMENTS AND OTHER OUT-OF-POCKET EXPENSES.

☐ COPY OF ANY COURT ORDER REQUIRING PAYMENT AND PROOF OF SUCH PAYMENTS FOR THE PAST 3 MONTHS.

---

EXHIBIT C

STATEMENT OF FACTS

IN SUPPORT OF PLEA AGREEMENT

Defendant JONATHAN TODD SCHWARTZ ("defendant") represents and admits that the following facts are true:

**Background**

At all times relevant to the Information:

Defendant was a resident of Agoura Hills, within the Central District of California. Defendant was a member of GSO Business Management, LLC ("GSO"), a business management firm based in Sherman Oaks, California. GSO provided financial guidance, including managing bank accounts, providing accounts payable services on clients' behalf, and preparing short term and long term budgets.

**The Scheme to Defraud**

Beginning by at least March 2009 and continuing until at least May 2016, defendant executed a scheme to defraud clients of GSO by taking for his own use monies belonging to the clients without the knowledge or authorization of the clients; falsifying records of the clients' accounts to conceal the unauthorized takings; forging the signature of one client on GSO receipts, thereby creating the false appearance that cash withdrawn from the client's account had been delivered to the client; and, when confronted, lying about what he had done with the missing cash.

Read and Agreed to



Specifically, between March 2009 and April 2010, defendant withdrew cash belonging to Client No. 1 without the knowledge, consent, or authorization of Client No. 1.  Defendant withdrew the cash, totaling $1,009,000, in 28 unauthorized transactions at City National Bank.  Client No. 1 was rebuilding his home during this period and defendant falsely coded a number of the unauthorized cash withdrawals as home renovations on the accounting records GSO maintained for Client No. 1.

Between at least May 2010 and January 2014, defendant withdrew cash belonging to Client No. 2 without the knowledge, consent, or authorization of Client No. 2.  Defendant withdrew the cash, totaling approximately $4.8 million, in 114 unauthorized transactions.  Defendant falsely coded the unauthorized cash withdrawals as "sundry/personal expenses" on the accounting records GSO maintained for Client No. 2.  When confronted about the missing funds, defendant falsely stated that the money was an "investment" in illegal marijuana "grow" businesses and that he and other GSO employees, none of whom defendant could identify, had delivered the cash to people, also unidentified, associated with the marijuana businesses. Although defendant claimed that Client No. 2 had signed "meeting packets" acknowledging the cash transactions, no such signed meeting packets in fact exist.

Between September and December 2014, and again in February 2016, defendant withdrew cash belonging to Client No. 3 without the knowledge, consent, or authorization of Client No. 3. Defendant withdrew the cash, totaling $737,500, in 10

2

Read and Agreed to

unauthorized transactions.  Defendant forged Client No. 3's
signature on at least two cash receipts pertaining to
transactions on November 25, 2014 (for $150,000) and December
16, 2014 (for $100,000).

Between October and November 2014, defendant withdrew cash
belonging to Client No. 4 without the knowledge, consent, or
authorization of Client No. 4.  Defendant withdrew the cash,
totaling $122,500, in 4 unauthorized transactions.

In 2015, defendant obtained $500,000 from Client No. 5,
based on defendant's representation and promise that he would
invest Client No. 5's money on Client No. 5's behalf and would
provide the interest from the investment to Client No. 5.
Defendant did not invest Client No. 5's money as promised.  In
2016, defendant returned $75,000 to Client No. 5 as "interest";
misappropriated the remaining $425,000 of Client No. 5's money;
and, without Client No. 5's knowledge or consent, used it to pay
defendant's own expenses.

In March 2016, defendant obtained $100,000 belonging to
Client No. 6 in an unauthorized transaction.  When confronted,
defendant promised to "take care of" the claim, but did not.

**Use of the Wires**

In furtherance of the fraudulent scheme, on or about
December 11, 2013, defendant caused a communication to be sent
via interstate wires, namely an e-mail from defendant's GSO e-
mail account in California sent to City National Bank, in
California, via a Network Solutions, LLC, server located in
Jacksonville, Florida, approving an attached "Request For

3

Read and Agreed to

Cash/Cashier's Check/Foreign Currency" for $97,500 in cash to be withdrawn from the account of Client No. 2, which was submitted by defendant and stated that defendant would pick up the cash at the Beverly Hills Branch of the bank.

### Subscription to a False Tax Return

On or about October 15, 2013, defendant signed and submitted to the Internal Revenue Service a United States Individual Income Tax Return, Form 1040, for tax year 2012 on which he reported, on line 22, that he had total income of $626,228. At the time that defendant signed the return and submitted it to the IRS he knew that he had additional income for tax year 2012 of approximately $1,621,500 and knew that he had a legal duty to disclose this additional income to the IRS.

\*\*\*

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT in its entirety. I have had enough time to review and consider this Statement of Facts, and I have carefully and thoroughly discussed every part of it with my attorney. I agree that this statement of facts is sufficient to support pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 of the plea agreement.

JONATHAN TODD SCHWARTZ                    Date   11·7·16
Defendant

4

Read and Agreed to