1                          UNITED STATES DISTRICT COURT
                           CENTRAL DISTRICT OF CALIFORNIA
2                          WESTERN DIVISION - LOS ANGELES

3

4    UNITED STATES OF AMERICA,    )   Case No. CR 17-22-DMG
                                  )
5         Plaintiff,              )   Los Angeles, California
                                  )   Monday, June 5, 2017
6              v.                 )   3:25 P.M. to 3:28 P.M.
                                  )   3:31 P.M. to 3:57 P.M.
7    JONATHAN TODD SCHWARTZ,      )
                                  )
8         Defendant.              )
     _____)
9

10

11                         TRANSCRIPT OF PROCEEDINGS
                    BEFORE THE HONORABLE PAUL ABRAMS,
12                  UNITED STATES MAGISTRATE JUDGE.

13

14   Appearances:                 See Page 2

15   Deputy Clerk:                Christianna Howard

16   Court Reporter:              Recorded; CourtSmart

17   Transcription Service:       JAMS Certified Transcription
                                  16000 Ventura Boulevard #1010
18                                Encino, California  91436
                                  (661) 609-4528
19

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

```
1   APPEARANCES:

2

3   For the Plaintiff:        Office of the U.S. Attorney
                              Major Frauds Section
4                             By:  RANEE KATZENSTEIN, A.U.S.A.
                              312 North Spring Street, 11th Floor
5                             Los Angeles, California  90012-4700
                              (213) 894-2432
6                             Ranee_Katzenstein@usdoj.gov

7

8   For the Defendant:        Morgan, Lewis & Brockius LLP
                              By:  NATHAN J. HOCHMAN, ESQ.
9                             The Water Garden
                              1601 Cloverfield Boulevard
10                            Suite 2050 North
                              Santa Monica, California  90404-4082
11                            (310) 255-9025
                              nathan.hochman@morganlewis.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1     <u>LOS ANGELES, CALIFORNIA, MONDAY, JUNE 5, 2017, 3:25 P.M.</u>

2     (Call to Order of the Court.)

3     THE COURT:  All right.  Good afternoon.

4     All right.  Before I call the calendar, I'd like to

5 advise the defendants here present of their constitutional

6 and statutory rights in connection with these proceedings.

7     Now, you're here because you've been charged with a

8 criminal offense against the United States or with a

9 violation of the terms and conditions of pretrial release.

10 If you've been charged in this district, you have received or

11 you will receive a copy of the charging documents.

12     You have the following constitutional and statutory

13 rights.  Please listen carefully.

14     You have a right to retain and be represented by an

15 attorney of your choosing at each and every stage of the

16 proceedings.

17     If you can't afford an attorney, you have a right

18 to request that the Court appoint an attorney to represent

19 you.  The appointed attorney will be paid for by the

20 Government at no cost to you.  You must, however, submit a

21 financial affidavit for approval of the Court before counsel

22 will be appointed.  If you make any false or misleading

23 statements in that affidavit or if you willfully omit

24 pertinent information, you'll be subject to further

25 prosecution for violating federal law.

1    You have a privilege against self-incrimination.
2 This means that you have a right to remain silent.  Anything
3 you say, sign, or write that tends to incriminate you may be
4 introduced against you in this or in any other court
5 proceeding.  You can refuse to make any such statements.  A
6 plea of guilty would involve a waiver of your privilege
7 against self-incrimination.

8    You have a right to have bail determined in
9 accordance with the provisions of the Bail Reform Act of
10 1984.

11    If the Government seeks detention, you have the
12 right to a hearing at today's first appearance or within 3 to
13 5 court days of today's appearance if a continuance is
14 requested and granted.

15    In the event you are detained, you have a right,
16 upon application of your counsel, to have the matter reviewed
17 by the criminal duty judge or other district court judge who
18 may be assigned.  You have a right to be present at all
19 subsequent hearings where further argument will be heard
20 regarding the modifying of the conditions of your release.

21    If you're not a United States citizen, you can
22 request that an attorney for the Government or a federal law
23 enforcement official notify a consular officer from your
24 country of nationality that you've been arrested.

25    For those defendants charged in a complaint with a

1    criminal offense against the United States, you're further

2    advised you have a right to a preliminary hearing or to have

3    the case presented to the grand jury within 14 days of this

4    date if you're held in custody or within 21 days if you're

5    released subject to conditions.

6              A preliminary hearing is a proceeding where the

7    Government presents its evidence and a decision is reached as

8    to whether there's probable or reasonable cause to believe

9    that the offense charged has been committed and that you

10   committed it.  If probable cause is not found, the matter

11   will be dismissed.  If probable cause is found, you'll be

12   required to enter a plea to the charges.  Probable cause may

13   also be shown by the return of an indictment by the grand

14   jury.  So if an indictment is returned against you prior to

15   or on the date of the preliminary hearing, then no

16   preliminary hearing will be held.  You'll be required to

17   appear and enter a plea to the indictment.  You can waive

18   your right for the -- to a preliminary hearing.

19             All right.  Let's call these two cases, please.

20        (Recess from 3:28 p.m. to 3:31 p.m.)

21

22                        AFTER RECESS

23        THE CLERK:  *United States v. Jonathan Todd Schwartz*,

24   Case No. CR 17-22-DMG.

25             Counsel, please make your appearances for the

1    record.

2           RANEE KATZENSTEIN:  Good afternoon, Your Honor.

3    Ranee Katzenstein for the United States.

4           THE COURT:  Ms. Katzenstein, good afternoon.

5           NATHAN J. HOCHMAN:  Good afternoon, Your Honor.

6    Nathan Hochman on behalf of Jonathan Schwartz, who's present,

7    detained.

8           THE COURT:  All right.  Good afternoon.

9           Sir, is Jonathan Todd Schwartz your true name?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  And, Mr. Hochman, I take it

12   you've been retained in his matter?

13          MR. HOCHMAN:  Yes, Your Honor.

14          THE COURT:  All right.  Have you received or seen a

15   copy of the -- I guess, the arrest warrant in this case?

16          You have that, Mr. Hochman, I assume?

17          MR. HOCHMAN:  Yeah.  I have a copy of it,

18   Your Honor.

19          THE COURT:  All right.

20          And Mr. Schwartz, have you seen that?

21          THE DEFENDANT:  I have not seen it, but I have

22   discussed it with Mr. Hochman.

23          THE COURT:  Okay.  And I don't want to know if what

24   they're saying is true or not.  I do want to know if you

25   understand what it is the Government says you did.

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  All right.  Thank you.

3           What are we doing here in terms of bail or not?

4           MR. HOCHMAN:  So -- you want to hear from myself

5   first or Ms. --

6           THE COURT:  I want to hear from both of you at some

7   point.

8           Ms. Katzenstein, what's your position?

9           MS. KATZENSTEIN:  Well, Your Honor, I think -- this

10  is an unusual procedure in that this is not a bail

11  determination in terms of prior to a trial or pending

12  supervised-release revocation proceedings or anything like

13  that.  All that remains in this case is for the defendant to

14  surrender to --

15          THE COURT:  Right.

16          MS. KATZENSTEIN:  -- begin serving his sentence.

17          Based on my conversations with Mr. Hochman before

18  the Court took the bench, my understanding is that he doesn't

19  dispute that that violation alleged in the Government's

20  application for the warrant, which is what was provided to

21  Mr. Hochman -- he doesn't dispute that that violation

22  occurred, and so the only question is what should happen

23  next?  And I would submit -- the Government would submit

24  based on all the information in the application that -- the

25  Pretrial Services recommendation that the defendant be --

1  commence service of the imposed sentence begin, that that is

2  the correct recommendation.

3       We -- looking at the 3142(g) factors, which is what

4  the Court needs to look at in this instance, he's already

5  been convicted.  He's been sentenced.  I would submit to the

6  Court that his conduct -- his recent conduct shows that he

7  can't be trusted to abide by the conditions of release.  He's

8  already demonstrated that.

9       We're not talking about a naïve person here.  He's

10  a financial professional, and yet notwithstanding the

11  admonition to him by Judge Walsh that if he were to violate

12  any condition of his release, including the condition that he

13  not transfer an asset worth $500 or more without notifying

14  the court and obtaining court permission, he did just that on

15  multiple -- at least once recently.  He also presented a

16  financial disclosure form to the United States Attorney's

17  Office that was incomplete that concealed a $50,000 payment

18  that he received.  He was under an obligation to either

19  report that money as cash, or if he had already spent it,

20  there was another provision in that report which required him

21  to report his transfers of funds.

22       So he hasn't been forthcoming, he's violated a

23  condition of his release, nothing remains in this case but

24  for him to start serving his sentence, and I would urge the

25  Court to order him to do so.

1              Thank you.

2              THE COURT:  Mr. Hochman?

3              MR. HOCHMAN:  Yes, Your Honor.  If I might, a

4    little history of this case in order -- which frames the bail

5    discussion.

6              THE COURT:  Before you get into that --

7              MR. HOCHMAN:  Yes.

8              THE COURT:  I assume that your ex parte application

9    has been shown to Mr. Hochman?

10             MS. KATZENSTEIN:  It has, Your Honor.  It had been

11   filed under seal.  And just for the record, we moved to

12   unseal it.  It was an in camera and based on -- I spoke with

13   the courtroom deputy and was authorized through her -- by you

14   through her to provide it to Mr. Hochman in advance of the

15   hearing, which I have done.

16             THE COURT:  All right.  So just to short-circuit

17   things, the Court has seen that and read it.  So you don't

18   have to get into stuff that's in that application that was

19   filed.

20             MR. HOCHMAN:  Yes, Your Honor.  Thank you.

21             THE COURT:  Okay.

22             MR. HOCHMAN:  About a year ago -- a little over a

23   year ago, Your Honor, Mr. Schwartz came to me.  The

24   Government was at the beginning of its investigation, the

25   Government had never reached out to Mr. Schwartz, they had

1    started talking to the victims, and Mr. Schwartz told me what

2    had happened and what he did and instructed me to immediately

3    go to the U.S. Attorney's Office and strike a -- and tell

4    them that he wanted to plead guilty, enter into a plea

5    agreement preindictment, and go through the process that

6    would lead to his conviction and sentence, which is precisely

7    what I did.

8          I actually tracked Ms. Katzenstein down, as the

9    prosecutor for the case.  I met with her.  I expressed in the

10   very first meeting that this was our intent, to plead guilty

11   to the full extent of the violation.  She said that it would

12   take, actually, a number of months to figure that out, and we

13   said, "Look.  Whenever you're ready, we're ready."

14         Several months later, Ms. Katzenstein contacted me,

15   presented us with a plea agreement for the full value of all

16   the theft that Mr. Schwartz had engaged in, as well as tax

17   offenses.  We did not fight it at all.  We signed the plea

18   agreement.  We then signed closing agreements with the IRS

19   that assessed a tax, a civil fraud penalty of 75 percent and

20   the interest thereto.  Everything that -- virtually

21   everything that we were asked to do -- plead preindictment,

22   sign plea agreements, waive indictment -- we did and

23   Mr. Schwartz -- and even cooperated beyond that.

24         That then led to the sentencing, Your Honor.  At

25   the sentencing we presented all this information to

1  Judge Gee.  Judge Gee gave a six-year sentence consistent

2  with the sentencing guideline range.  Judge Gee then allowed

3  Mr. Schwartz to self-surrender on a $25,000 secured bond.  He

4  had been on an unsecured --

5           THE COURT:  Right.

6           MR. HOCHMAN:  -- bond before that, Your Honor.

7           The only thing that, basically, has changed is --

8  you know, as far as the factors go, is -- let's look at,

9  basically, the topics.

10          Flight risk.  There's no evidence before, during,

11 or at this present time that Mr. Schwartz is a flight risk.

12 Certainly, there's no indication that he's doing any other

13 preparation, Your Honor, other than to prepare to go and

14 serve his sentence.  In fact, I shared with Ms. Katzenstein

15 that he even -- one of the payments that the money was used

16 for was to deal with a consultant to deal with the Bureau of

17 Prisons that sort of provides him with information on what

18 happens with the Bureau of Prisons.  So every indication is

19 that he would show up on July 11th if allowed to self-

20 surrender.

21          Danger to the community, Your Honor.  Again,

22 there's no indication whatsoever that he's either -- since

23 this offense has been completed that he's a danger to the

24 community.  Nothing in this particular check shows that he's

25 a danger to the community.  Again, there's no evidence that

1    he's a danger to the community.

2         With respect to this particular violation, as --

3    basically, what I've been able to learn is as follows:

4    Mr. Schwartz did not actually apply for this -- did not make

5    the insurance claim.  He and -- or his ex -- his soon-to-be

6    ex-wife did.  The property was in Mr. Schwartz's name.  The

7    check was issued to Mr. Schwartz.  Mr. Schwartz didn't have a

8    bank account nor has he had one since approximately January

9    of this year because the banks, based on his financial

10   history, effectively kicked him out.

11        He gets the check, and what he should have done,

12   Your Honor, is he should have called his Pretrial Services

13   officer and said, "Look.  I have a check.  I want to have my

14   fiancée deposit this check into her bank account so we can

15   then use it to pay bills," in essence, including bills

16   related to legal fees, and he didn't do that.  That was his

17   mistake.  He's here to own up to that mistake.  He didn't

18   call his Pretrial Service officer and ask for permission to

19   do this.  It constitutes a transfer because he then signed

20   over the check to his girlfriend -- excuse me -- his fiancée,

21   who then used it to pay their mutual bills.  It's a mistake.

22        The question is, given all his conduct, given the

23   fact he's not a flight risk nor is there any evidence of it,

24   he's not a danger to the community, he did make this mistake,

25   Your Honor, does that then justify the previous findings by

1  Judge Gee that he be allowed to self-surrender and will show

2  up based on his current bond -- his current bond is secured

3  by a $25,000 deed of trust on his mother's house -- that he

4  will show up on July 11th?  I would say to the Court that he

5  will -- I mean, as best you can determine anything by past

6  performance, he will show up on July 11th and commit no more

7  violations.

8        There's nothing that sends a message more loud and

9  clearly that you have made a mistake than having, you know,

10 Ms. Katzenstein apply to the court for an arrest warrant and

11 having eight FBI agents show up at your door at 6:00 a.m. on

12 a Monday over a $15,000 check that you didn't ask permission

13 for the -- from the Pretrial Services to transfer or use in

14 any way.  That message has been driven into Mr. Schwartz's

15 head -- I have done it as well -- to make it clear that he

16 has to be hypervigilant.  Any reservation or concern that he

17 might even have for a millisecond that he should call his

18 Pretrial Service officer, call the Pretrial Services officer.

19 If anything -- you know, err on the side of calling your

20 Pretrial Service officer, rather than, you know, even

21 potentially get near a line in this case.  I think that

22 message has been driven loud and clear into his head.

23        Starting tomorrow for the next nine days

24 approximately -- he and his wife had -- his former wife had

25 three children, Your Honor.  Their youngest son is

1  13-years old, and Mr. Schwartz has been allowed to see his

2  youngest son from starting tomorrow, June 6th, until

3  June 15th.  After that, the son apparently is going away for

4  the rest of -- well, at least beyond July 11th to camp, and

5  the next time Mr. Schwartz most likely will see him is

6  somewhere between four to six years from the time he goes

7  into jail at that point.

8          If he's not -- if he's -- it's just one more

9  reason, Your Honor, he will be hypervigilant if Your Court --

10 the Court allows him to remain on the bond that he's been on.

11 Seeing his son means the whole world to him, and being

12 detained at this point, which would then be -- would disallow

13 him to see his son for these next approximately nine days, I

14 mean, that -- his son means everything to him, Your Honor.

15         So I would ask the Court that -- acknowledging that

16 he made this mistake, that the Court give him one chance and

17 one chance only, reinstate this bond, which is effectively

18 for the next five weeks.  He's been designated up in

19 Sheridan, Oregon, Your Honor, and as the Court might

20 understand it, if he is detained here, he will then be put on

21 the Bureau of Prisons's transportation -- U.S. Marshal's

22 transportation network, which is not a direct flight to

23 Sheridan, Oregon.  I mean, they can ship you to Tulsa and

24 work their way back.

25         So I ask the Court to give him this one chance.  He

1   -- I in no way expect him ever to be back in front of this

2   Court.  He will show up on July 11th.  He will serve his six-

3   year sentence and, hopefully, come out and, you know, be a

4   productive, contributing citizen at that point, but he will

5   be punished for the actions that Mr. -- Ms. Katzenstein

6   prosecuted him for.  He accepted responsibility in front of

7   Judge Gee for those actions.  We ask the Court to reinstate.

8            THE COURT:  Thank you, Mr. Hochman.

9            Ms. Katzenstein, any response?

10           MS. KATZENSTEIN:  I mean, I -- it's one thing to

11   call it a mistake.  In fact, it's a violation of his pretrial

12   release, and I don't think that's something to be taken

13   lightly.

14           He owes $8.6 million in restitution.  Every time he

15   spends money, that is a further violation of the rights of

16   his victims by spending money that's rightfully theirs.  He's

17   already demonstrated that he's not going to abide by the

18   conditions of his release, that he didn't take them

19   seriously.  He has -- it's not just a $15,000 check.  It's

20   false statements to the United States Attorney's Office on

21   the financial form, which failed to disclose a $50,000

22   payment to him.  It's not merely an omission.  He was under a

23   duty to disclose that.  I think it's more serious than

24   Mr. Hochman makes out, particularly because it is a financial

25   crime, and, again, there are no proceedings here other than

1  serving his sentence, and I think he should be ordered to do

2  so.

3            Thank you.

4            THE COURT:  Thank you.

5            Anything -- do you want to respond about the

6  $50,000 payment in the financial form, Mr. Hochman?

7            MR. HOCHMAN:  Yes, Your Honor.  The $50,000 -- this

8  occurred before he was put on --

9            THE COURT:  Right.

10           MR. HOCHMAN:  -- bail at the end of the year,

11 Your Honor.  My understanding is that the $50,000 was money

12 he received back and then used to pay, basically, legal fees.

13 He left the section on -- legal fees and expenses.  He left

14 the section that says "Have you transferred more than" -- I

15 think it's a thousand dollars -- blank, Your Honor.  He

16 should have put that there.

17           MS. KATZENSTEIN:  Yes, he should have.

18           MR. HOCHMAN:  He no longer had the cash by the time

19 he's filling out the financial form, but Ms. Katzenstein is

20 right that he should not have left that section blank.  He

21 should have indicated legal fees and the -- and, you know,

22 assorted expenses that he used the money for.  That was a --

23 you know, that was a mistake.  He filled out, again, the rest

24 of the forms correctly.  Had he put down legal fees,

25 Your Honor -- I've never -- I haven't seen the

1  U.S. Attorney's Office indicate that payment of legal fees in

2  this case was something that they were going to seek to

3  recover.  He should have put it down, Your Honor.

4        And again, it's -- the Government's trying to make

5  this look like a pattern, Your Honor.  Again, the -- filling

6  out -- not indicating that it was legal fees on that form,

7  it's something that should have been put down, Your Honor,

8  but, again, whether or not he's going to show up on

9  July 11th, which I think is our question for today, I believe

10  that the evidence is not -- certainly not clear and

11  convincing or in any, way, shape, or form that he's a flight

12  risk or a danger to the community.

13        And if he violates any condition going forward

14  between now and July 11th, Your Honor, I've told him directly

15  he will be taken into custody and that's it.  We're only --

16  you know, he's acknowledged the mistake with respect to the

17  $15,000 transfer.  He should have asked -- called his

18  Pretrial Service officer, I think he completely understands

19  that at this point, Your Honor, and, again, we'd ask the

20  Court to give him this one chance and reinstate him,

21  Your Honor.

22        THE COURT:  I'll give you the last word if you have

23  anything to add.

24        MS. KATZENSTEIN:  I -- unless the Court has any

25  questions.

1          THE COURT:  I don't.  I think have a pretty good

2    sense of the situation.

3          So I'm looking at the bond that was -- the new

4    bond, the second bond, the secured one.

5          MS. KATZENSTEIN:  Yes.

6          THE COURT:  I don't see any condition of pretrial

7    supervision -- at least the box isn't checked -- and I don't

8    see anything about surrendering passports and signing the

9    declaration about no passport and travel.  Is that -- was

10   that an oversight?  Was it not ordered at the time, if you

11   recall?

12         MS. KATZENSTEIN:  There was -- I don't believe

13   there was supervision, Your Honor.  He came in on an

14   information -- Mr. Hochman's correct.  He came in on an

15   information.  He was compliant until he stopped being

16   compliant and about a very significant thing, namely, the

17   money that belongs to the victims.

18         THE COURT:  Okay.  All right.  What the Court needs

19   to decide -- well, the first part apparently is not an issue.

20   There's clear-and-convincing evidence that he has violated a

21   condition of release.  So the question becomes are there

22   conditions or combination of conditions that will reasonably

23   assure that he won't flee and that he -- or that he's

24   unlikely to abide by any condition, and based on the nature

25   of the allegation here -- or at least the nature of the

1  violation that's been alleged and not contested, it's

2  obviously serious given the nature of the underlying offense.

3  It's obviously serious because it's a clear violation of the

4  bond that was ordered, but I want to look at it in context of

5  what the point of being out on bond is, and that is, you

6  know, danger.  That is flight risk.

7          There doesn't seem to be any indication or

8  allegation that the money that was transferred was used to

9  plan flight or that was used -- that it was used to somehow

10  create some sort of danger.  And were it not for the fact

11  that the defendant is preparing to self-surrender, that he's

12  been sentenced -- were this prior to trial, the Court is

13  pretty certain that he would be re-released on various

14  conditions.

15          So, for me, the question is, since it's close to

16  the end of him having to report, does that change the

17  calculus?  And I find in these circumstances that it does not

18  in that there are conditions -- additional conditions that

19  will assure that he won't flee or pose a danger and that

20  he'll abide by the conditions.

21          Right now he's on a $25,000 secured appearance bond

22  secured by his mother's home.

23          MR. HOCHMAN:  Yes, Your Honor.

24          THE COURT:  The Court's going to increase that to a

25  hundred-thousand-dollar fully secured.

1          The amount of restitution that's owed, it's

2   millions of dollars; right?

3          MS. KATZENSTEIN:  It's $8.6 million.

4          THE COURT:  So it's huge.   And while it's

5   disturbing and concerning that he violated a condition

6   dealing with the amount -- with money, the amount is almost

7   de minimis compared to the amount he owes.  Now, if we were

8   talking about, Oh, he transferred a million dollars, if he

9   transferred, you know, a hundred thousand dollars, I might

10  feel otherwise.

11         MS. KATZENSTEIN:  Your Honor, if I might --

12         THE COURT:  Please.

13         MS. KATZENSTEIN:  -- I would say this:  It is an

14  enormous restitution order, and it's unlikely that the

15  victims will ever see all of it, which makes whatever there

16  is available all the more significant.  The fact that what

17  little there might be available he's taken for himself, he's

18  not given to the victims, even that amount he's taking for

19  himself, I think it's just the opposite of what the Court is

20  suggesting.  It's very significant that he takes that for

21  himself.

22         And the fact that he is -- there's a judgment and a

23  restitution order that has been entered right now means that

24  every penny he has belongs to the Government for purposes of

25  the victims.  There is a lien on every penny he has.  Every

1  time he spends money to go out to dinner or to buy gas or to

2  do anything, he's spending the victims' money.  That is a

3  danger in and of itself.  He's depleting resources that could

4  have been available for the victims.  I -- it's a very

5  significant case, was an enormous rip-off -- excuse the term

6  --- excuse the colloquialism -- of these victims, who now may

7  not recover.

8          I don't know what reason there is for him to remain

9  out.  The bond in a pretrial context, sure, we look at danger

10 to the community, we look at risk of flight because the

11 person hasn't been convicted of anything.  Those are all

12 concerns.  That's not the analysis here.  He was permitted to

13 remain on bond by Judge Gee to get his affairs in order prior

14 to self-surrendering.  He's been on that bond for five weeks.

15 He was sentenced on May 3rd.  What purpose remains for him to

16 remain on bond I don't know.  Frankly, Your Honor, it's a

17 different analysis, in my view, and I think he should serve

18 his sentence.

19         THE COURT:  I understand that.  For whatever

20 reason, Judge Gee gave him that amount of time.  She

21 determined --

22         MS. KATZENSTEIN:  He asked for that amount of time

23 and so --

24         THE COURT:  Okay.  Well, and she --

25         MS. KATZENSTEIN:  -- gave it to him.

1          THE COURT:  -- apparently didn't have a problem

2     giving him that, and I am going to give him this one last

3     opportunity.  I think it's -- he well understands now what he

4     needs to be doing and what he can't be doing.  As I said, I'm

5     going to change the bond to make it a hundred-thousand-dollar

6     secured bond, I'm going to require Pretrial Services

7     supervision and to the extent -- what's his passport

8     situation?

9          MR. HOCHMAN:  He's -- I think he's -- surrendered

10    the passport, Your Honor, to Pretrial --

11         THE COURT:  To Pretrial?

12         MR. HOCHMAN:  -- Services.  Yes.

13         THE COURT:  Okay.  Then if he didn't sign the

14    declaration re: passport and other travel documents, I want

15    that signed, meaning that he won't --

16         MR. HOCHMAN:  He signed --

17         THE COURT:  -- apply for another passport or other

18    travel document.

19         MR. HOCHMAN:  I --

20         THE COURT:  Again, I don't see the box checked

21    here, which is why I'm doing this, and to what it's worth --

22         MR. HOCHMAN:  Yeah.  And we're happy to sign it

23    right now, Your Honor.

24         THE COURT:  Right.  To what it's worth, it's easy

25    enough to sign that.

```
 1              The other conditions of bond will remain.
 2              To the extent that there is any confusion as to the
 3    transfer of money, since the space was blank, defendant is
 4    not to sell, transfer, or give away any asset valued at $500
 5    or more without notifying and obtaining permission from the
 6    court.
 7              MS. KATZENSTEIN:  Your Honor, can we adjust that to
 8    $200 or a hundred dollars?
 9              THE COURT:  We'll make it $200.
10              MS. KATZENSTEIN:  All right.
11              THE COURT:  I think that's reasonable in the
12    circumstances.
13              MR. HOCHMAN:  That's fine, Your Honor.
14              THE COURT:  And all other conditions will remain
15    the same.
16              Now, you're going to tell me it's going to take a
17    little while to post the remainder of the bond.
18              MR. HOCHMAN:  Yes, Your Honor.
19              THE COURT:  The house is already deeded over to the
20    court.
21              MR. HOCHMAN:  Twenty-five-thousand dollars is.
22              THE COURT:  Twenty-five-thousand dollars of the --
23    of it.  So the Court is going to allow his re-release
24    forthwith upon the signing of the new bond, upon the signing
25    of and filing of the passport declaration, and give to the
```

1    close of business this Friday, Mr. Hochman, to post the

2    remainder --

3              MR. HOCHMAN:  Yes, Your Honor.

4              THE COURT:  -- of the bond with the mother's house.

5              The amount of bond appears to be nearly all of the

6    mother's interest in the house, if I'm reading the documents

7    correctly.  I believe that it indicates she has a 50 percent

8    interest in the house --

9              MR. HOCHMAN:  Correct, Your Honor.

10             THE COURT:  -- and there's 200-some-odd dollars in

11   equity.

12             MR. HOCHMAN:  That's what's --

13             MS. KATZENSTEIN:  Actually, Your Honor, under --

14   according to Zillow, there's over $500,000 worth of equity.

15             THE COURT:  I saw that.  The other came from a tax

16   bond?

17             MR. HOCHMAN:  Yes.

18             THE COURT:  Which is generally what the court

19   refers to in determining the equity in a property because

20   Zillow who knows, you know, where they're getting their

21   numbers from.  So that's why I'm ordering it up to a hundred-

22   thousand dollars.

23             MR. HOCHMAN:  Yes, Your Honor.

24             THE COURT:  I want to make sure that your client

25   understands, Mr. Hochman, that if there is any violation, his

1  mother's share in the house is essentially gone and there's

2  not going to be much of anything left.

3           MR. HOCHMAN:  Yes, Your Honor.

4           THE COURT:  So --

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  -- the Court finds -- I'll make it

7  formal that there are conditions of release that will

8  reasonably assure that he not flee or pose a danger and that

9  he will abide by the conditions of bond, and that is the

10  Court's order --

11          MR. HOCHMAN:  Thank you, Your Honor.

12          THE COURT:  -- at this time.

13          THE DEFENDANT:  Thank you, Your Honor.

14          MR. HOCHMAN:  We'll get you the --

15          THE COURT:  Hold on.

16          MR. HOCHMAN:  I'm sorry.

17          THE COURT:  Ms. Katzenstein?

18          MS. KATZENSTEIN:  And so when you say he'll be

19  forthwith released, on a signature of his own?  Who's

20  signature -- who's bond must be --

21          THE COURT:  Upon him signing the bond.  Okay.  I

22  assume that his mother's not here in court; is that right?

23  She's in Northern California?

24          MR. HOCHMAN:  That's correct.  She's in

25  San Francisco, Your Honor.

1          THE COURT:  Yes.

2          So upon his signature, he's -- he -- upon him

3    signing his bond -- the conditions of bond, upon him signing

4    the affidavit re: passport, he'll be released, and then there

5    -- they have until the close of business this Friday to post

6    the remaining $75,000.

7          MS. KATZENSTEIN:  Okay.

8          THE COURT:  Okay?

9          MR. HOCHMAN:  Thank you very much, Your Honor.

10          THE COURT:  Anything further, Mr. Hochman?

11          MR. HOCHMAN:  No.  Just the --

12          THE COURT:  Well, I assume they'll keep him here

13    long enough to sign this?

14          MR. HOCHMAN:  Yes.

15          THE COURT:  Okay.

16          MR. HOCHMAN:  Okay.  And I'll go get the

17    declaration --

18          THE COURT:  Ms. Katzenstein, anything further?

19          MR. HOCHMAN:  -- right now as well.

20          THE COURT:  Anything further for the Government?

21          MS. KATZENSTEIN:  No, Your Honor.

22          THE COURT:  All right.  Thank you.

23          THE DEFENDANT:  Thank you, Your Honor.

24      (Proceedings adjourned at 3:57 p.m.)

25    ///

1

2

3

4                              CERTIFICATE

5         I certify that the foregoing is a correct transcript

6    from the electronic sound recording of the proceedings in the

7    above-entitled matter.

8

9    /s/ Julie Messa_____            June 16, 2017
     Julie Messa, CET**D-403             Date
10   Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25